We will now call the case of the United States v. Noel. Mr. Howells Good morning, ma'am. My name is John Howells. I've been asked to argue a case on behalf of the peace of the world. I would like to address the issue that is, I think, most significant with respect to this appeal, which is the revamp regarding the motion for the trial. I apologize to the court, and I apologize to those in counsel. There is one other case that might come into play here on a peripheral matter, and that case is United States v. Mitchell, which is cited at 690 Fed Third 137, which is the third circuit case. And I'm going to start there because I think it sets the guidelines that this court needs to recognize with respect to Judge Gomez and with respect to motions for the trial. That is a case that deals with an issue very similar to this, respectfully, but is most important because it is an implied bail bias case, just as this one, that one dealt with a family member of the prosecutor. This case deals with a law enforcement officer who is still employed with the marshal's service, with respect to him being on a juror. Has a case dealt with that? This case deals with that. The importance for our purposes, and our purposes, I think, is that it is a 2012 case. We're dealing here with a 2016 case where the judge has decided on his own, after the case on motions for the trial has gone back there, to not provide a hearing, an evidentiary hearing. What evidence is there in the record that the juror lied in the first place? The evidence is that a crime of omission. On at least two occasions, the judge... But if he said he didn't remember. Now, is he lying when he said he didn't remember? That he didn't remember that he was working for the United States Marshals and provided... That he didn't remember that he had any contact at all with the defendant? The question wasn't posed that way, and that's where part of the problem is. Well then, what is the proof that he was lying? He... Well, the question was, he says... I'm now... Is there anything... Well, the questions that were asked by the judge is as follows. Because I think it's important. He says that the juror said he wanted to make an arrest when I was a corrections officer for 26 years. Yet he says, were you involved in any arrests in this case? No. You're currently employed by both United States Marshals. And the court says, is there anything in that experience that prevents you from following my instructions on the law? No. What do you put in the record that suggests that there is anything false about any of those responses? What's false in this is that he is working for law enforcement at the time. It is... That's disclosed. That's disclosed. But he says that... And the government takes a position that he's indicated he's not having any dealings with these particular individuals. What indicates that he in fact did? The records that were supplied on the motion for reading. Those indicate he was working that day and dealing with some prisoners in the courthouse. And... What is the... What in the record indicates that he was working with this particular defendant in the courthouse? He was... Well, on July 11th, July 12th, July 17th, the records indicate that he was working with respect to moving the Marshals, with respect to moving this particular defendant from one facility to another facility to go into court. Mr. Howes, why is that a material omission? It's material in this particular record, Judge. You need to have a material question that was wrongly answered on voir dire. And... Yes, sir. And the government takes the position that it was the responsibility of the defendant to provide that particular question to the court. My suggestion is it was the court's obligation, because the court cites to the Supreme Court cases the first case cited in the brief, which is the first case cited by the government, or in the opinion, that is a civil case. It was extended in that particular case that the jurors had the opportunity to be questioned by the attorneys, or the attorneys had the opportunity to question the jurors. There's got to be enough information provided by the judge. And the judge, in this particular case, didn't ask that follow-up question. Has there been something that indicates that there were no other prisoners who were being moved in the courthouse that day? The indication is that the co-defendants were being moved the same day. The co-defendants were ultimately justified in this defendant. What in the record reflects that those were the only prisoners who were being moved in the courthouse that day? There would not be anything in the record showing that they were the only ones who were moved that day. Then why isn't it purely speculation that when he was moving prisoners that it involved this defendant or his co-defendants? Answer that again. I didn't hear it. I'm sorry. I just didn't hear you. Why then is it not pure speculation that when he was moving prisoners in the courthouse that day, that he was moving this defendant or his co-defendants, as opposed to others who may have been moved around the courthouse in different proceedings? Because he was assigned, as my understanding of the record shows, he was assigned to that particular hearing, on the bond hearing, and on the arraignment hearing. Where is that reflected, that he was assigned to this particular hearing? The best answer I can give you today is in the documentation that was supplied on the motion of the hearing, on the motion for the remand. Where in the record you presented to us is it mentioned? In the marshal service records that were subpoenaed a few months later? No, no, in the records you provided to us on this appeal. Give us a record site so we can, because in preparing for the case, I did not find any such specific records. The references are candid, which I must be, of course, with you. It consists of information and belief that this particular juror performs certain services. And the actual records only reflect that he was working that day with transportation. And that is the transportation of my client. Not that he was assigned to any particular hearing or any particular defendant. Judge, I have not appeared in St. Thomas. I have appeared throughout federal courts in Florida and elsewhere, as far north as New Jersey. They are going into court with the marshal service. They have a marshal service, so they're with them. If that was his job that day, that's what he's doing that day. He's transporting the inmates from when they're arrested into the court room. And taking back out of their interview, in this particular case, the annex and into another facility. So what is there about that job that made the marshal in question, juror number 11, an impartial juror? We don't know that because the judge did not conduct, at that time, any determination. He made an assumption. He assumed that my client, who did not recognize this individual. Well, he said, I don't know which questions. The question is, is there anything in your experience that would prevent you from following my instructions? He says, no, sir. Is there anything in that experience that would prevent you from listening to the evidence in this case fairly impartially? No, sir. Which question would you propose that a judge sitting in Bordier go further on? When he says to the marshal and sidebar, what's your employment at this point in time? I was in corrections for years. I am now a contract officer with the United States Marshals Service. That tells that judge, that tells us here now, that the judge needs to go further and say to him, what are your responsibilities? What are your duties? The fact that he might not recognize the person at that moment does not take away the fact that he has gained information while he's present in the courtroom with respect to this case that the jurors don't hear. If you take it to the logical side. Well, where does it show that? I mean, if you are working with the Marshals Service and handling scores of prisoners over the years, hundreds of prisoners over the years, are you going to remember every single prisoner? If you bring a prisoner into the courtroom, if you do that ten times a day, a year later, are you going to remember the ten prisoners that you brought into the courtroom? Not when you're doing ten times a day in scores of defendants, but this is a small courthouse, a small volume of cases coming through it. Likewise, your client didn't recognize juror number 11. That is the position that the trial counsel took at that particular time. It was after he got a tip that he needed to check out about this person, which only he could do after a change in the rules that allowed the attorneys to get certain information with respect to the panel. Let's go back to the standards involved for even getting a hearing, because you need to meet all of the early prompts. One is the exercise of reasonable diligence. And here, it's not until about 18 months after the verdict that there is this motion filed. What justifies treating that as reasonable diligence if we're not going to look back and say, you could have made the same request during or before the time of the trial? Well, we could not get the records. No one could get the records before the time of the trial until the change in the rule occurred. It allowed the panel to get the panel information that we provided them. And you're not going to get that information ahead of time from going to the clerk's office. Was there any earlier request for records? There was not an earlier request for records, not until the attorney that tried the case had a notice from somebody else, you needed to check out, you need to check on this particular juror, this particular juror has a background in law enforcement. But that information, that is the nature of the tip, that this juror has a background in law enforcement. That was disclosed in the course of your interview. Yes, ma'am. But I think that if responding to that by putting in a request would be reasonable diligence, and it would seem that reasonable diligence wasn't exercised at the time of trial, which is where we focus under Kelly, right? At the time of trial, yes. But the due judge, it's within the three years, which is the requirement with respect to the due trial. It's within that time frame. On a newly discovered evidence. This is a newly discovered evidence issue with respect to the bias, the implied bias on the part of the juror. But you don't disagree we're applying the ability, you just have to satisfy the reasonable diligence problem. I agree. And they did do that. I think what's most significant and doubtful is that the government waited over a year before they responded to this request, claiming, and I'm not talking about this particular government officer because she was not a trial counsel at that time, but that there was no response for over a year to engagement. What are you arguing should have been done here? Are you asking for a new trial or are you asking for a remand for an evidentiary hearing? I think a remand for an evidentiary hearing is appropriate before a judge who was duly appointed at this time. Who's what? Who was duly appointed at this time. Judge Gomez, I understand, is no longer appointed. He's not one of the three judges. So it needs to go to a judge that is duly appointed now to do that hearing. But I suggest that we're entitled to an evidentiary hearing in front of a judge to determine what evidence there is to support our position. That there was enough shown in the original motion and the documentation that was provided. There was enough shown there to entitle us to a hearing in evidentiary. And that's why, again, by appointing a judge, because the judge has had a reversal from this court of public work, directing there be fact-finding done. And there was no fact-finding here. The judge simply makes the argument, well, I'm assuming that because the defendant doesn't recognize the juror, you've got a juror pool, you've got more defendants. Two defendants, actually, at the beginnings of this case involved in what's going on here. You're expecting a person who's never been in trouble in their life to go into a courtroom and recognize that group of people that are sitting right here, that one of those people might have been the one to transport them. That might have been somehow involved in this. Isn't this exactly the approach we took in Claxton after Mitchell? Claxton's a 2014 case. Right. And the Claxton standard, the embrace of the Second Circuit Steward standard, was that even to get a hearing, you need to show clear, strong, substantial, and incontrovertible evidence that a specific non-speculative impropriety has occurred. Are you asking us to alter that standard to entitle you to a hearing here, or are you arguing that that standard, incontrovertible evidence that a specific non-speculative impropriety has occurred, that standard is met? That standard was met because there was no argument on the part of the government at all that any of the facts contained in the motions, the motion for Mitchell, the motion for Remand, was ever controverted in any way. The only inference that they make is Judge, he's said enough, that he could be fair and impartial. But the fairness and impartialism is not necessarily in the body of the juror. At that point in time, it's in the mind of the judge who had the responsibility to ask that further question. What were your duties as the United States Marshal during the time that this defendant was in court? On those days. If attorneys had been allowed to conduct a court hire, I assure you, I would have asked those questions. Mr. Juror, what were you doing during those days? What questions did you ask? And I would do it outside the presence of the jury. Because remember, when these inmates are coming in and out of jail, they're coming in and out of the facilities that they're taken to from place to place, they're handcuffed. If this was a case that a jury saw the defendant in handcuffs, with chaplains that way, we wouldn't even be here because it would already have been reversed. Thank you, Mr. Howell. Thank you. Ms. Edwards. Good morning, Your Honors, and may it please the Court. Mary Edwards on behalf of the United States. Your Honors, for precisely the reasons that you already pointed out, the District Court properly exercised its discretion in denying the motion for new trial and doing so without any inferred hearing. As an initial matter, there is no need to hold an evidentiary hearing if the facts as alleged, if proven true, would not entitle the movement to relief. Furthermore, as this Court has made clear, holding such hearings in the context of post-verdict hearings, which require only a discharge or acting to court for inquiry, is to be used sparingly. And for that reason, I believe that that's why this circuit has held that in order to be entitled to a hearing such as this, alleged injurer dishonesty, that a defendant must show with clear, strong, substantial, incontrovertible evidence that there was indeed a specific non-speculative impropriety that could have prejudiced him. Counsel, in terms of the framework that we used to analyze this problem, do we look first at a threshold question of whether reasonable diligence was exercised? Absolutely, Your Honor. That's Rule 33's requirement that the alleged newly discovered evidence that the defendant established that it is not so newly discovered to him. In other words, that it wasn't not discovered earlier due to any lack of due diligence on his part. So help us with that issue, because the government at voir dire expressly took the position that juror number 11 had no dealings with the defendant in this case. Well, the government was responding to what had been elicited at that point in time, specifically the juror had explained that he had made arrests in his role as a corrections officer or as a contractor with the Marshals Service. And when broke, he said that he didn't make any arrests in this case. But if what was elicited was sufficient to satisfy the government that there was no need for further inquiry, then why would it be a lack of diligence on the part of defense counsel to leave the questions as is, move forward, and wait until a later date when new information, a tip, as your colleague has suggested, resurfaced that there might actually be more here than the juror disclosed? For a couple of reasons, Your Honor. What was probed was specific to an arrest. If counsel, as now is being argued, feels that any interaction, the mere transportation of the defendant or observing any court hearings would be sufficient for a court to find implied bias, then it was counsel's duty to so argue to the court so that then the court could further inquire if, in fact, any such interaction. The government's conclusion was that, from what the juror said, he indicated, quote, he had no dealings with these particular defense counsels. Right, and I think that that was a fair summary when considered in context of what the exchange consisted of, and it was specific to the questions that were asked. Now, the government saying, look, there's no problem here, he didn't have any based on what was said does not mean that even if he had had any sort of dealings, no matter how limited, that it would necessarily rise to an implied bias. So the response that had been given as to, did you have any dealings with the arrests in this case that was specific, and if that was the standard, then there was no problem. But if defense counsel saw that there could be an additional problem, any sort of interaction. I didn't see it at the time. Their point is they didn't see it at the time, just like the government didn't see it at the time. And therefore, when Kelly tells us to focus on the time of the trial, reasonable diligence is satisfied as of the time of the trial. Well, the government still doesn't see it to this date. The facts as alleged, even if true, even if juror number 11 had transported the defendant to and from the ANS four and five months prior to the hearing, there's no basis to believe that there was anything about that interaction that would make it so he couldn't be fair and impartial. So the government is not arguing that there was a lack of diligence in raising this at the time of the ordeal? There's nothing in the changed circumstances that would have caused counsel to suddenly focus in on this issue. So nothing from being told, hey, I'm a contractor with the U.S. Marshals, nothing in the interim, those 19 months, except now we're hearing today that someone said, hey, he's in law enforcement. Again, I don't know how that changed because that information was known. There's nothing that developed that said, you know, he was hiding something or there was a basis to probe further on the basis of something not then known. What was the tip that was received? I'm not sure. I just heard this for the first time today, an argument that there was, in fact, a tip really to counsel to further probe into this particular juror. Ms. Edwards, I know that counsel chose to focus his argument on this juror question, but that doesn't mean that they didn't rely on your brief for the rest of their case. I'd like to ask you a question on the Confrontation Clause issue that's raised in both your briefs. There seem to be some limits, that the district court placed some limits on defense counsel's right to question Ortiz and Acosta, and particularly Acosta was not allowed to be asked certain questions about their sentencing range. Tell me why those limits were not constitutional problems in this case. Well, Your Honor, the limit was specific and narrow, and it was directed to numerical ranges. The court made clear that counsel could probe each cooperating witness and elicit the fact that they were facing substantial time, and, quote, they were essentially singing for their suffer. Counsel did do so by probing, by asking each defendant whether they were facing substantial time. What was substantial time? I mean, if I've had no contact with the criminal justice system, I might think substantial time was six months. Well, I think that counsel made it clear without resorting to numbers, made it clear that in each case it was substantial to those cooperating witnesses. For example, with Ortiz, he was able to get Ortiz to admit that the amount of time consumed him that he was facing, that he was up all night worrying about it and how he could reduce that sentence, and then by testifying, he was hoping to make that reduction, to earn that reduction. With each defendant... But how do you know what... how does the juror know what substantial time is? I think that the real focus is whether it's that testifying witnesses, if it's substantial to them because it's their motivation. So maybe, you know, 30 days in jail wouldn't mean much to... Yeah, but that's what the court would not let counsel get into, was the amount of time. And, you know, I'll grant you that maybe our jurisprudence from Chandler on through some other cases maybe is not the clearest, but doesn't Chandler specifically address this question? Well, I think it's different. I think John Baptiste is more that this... that the court followed the holding in John Baptiste. Yes, but did John Baptiste actually follow Chandler? Well, I think that they're distinguishable in this regard. In Chandler, the testifying witnesses, they were... it was elicited a range of 10 to 12 months when, in fact, that's a lot... that's specific and specifically a lot lower than the 8 years that he was potentially looking at before testifying. Now, to not allow the fact that he was looking at 8 years before and then allow a testament for him to testify that he's looking at 12 to 18 months and he's hoping to reduce that sentence, that's a disparity. And by not allowing the counterbalance that he would initially have been looking at in such a large amount of time, passed arguably... it mischaracterized the significance and the magnitude of the reduction. But didn't it use the right word, the magnitude? Without allowing counsel to be able to look at the distinction between what he could have been, what they could have been charged. If they'd been charged with everything that they could have been charged with and not plead to the lesser counts with lesser quantities of drugs, wouldn't that magnitude be the kind of information that could make a juror question the credibility of the witness as to the reason why they're testing, just that overall credibility? Isn't that what Chandler gets to, is magnitude? It does, but the context, again, is important because you have, on the one hand, this far-minimized range, a specific range that was elicited and testified to with the unspoken that it dropped from eight years to this range. Here, each codefendant testified that they were able to plead to something that was less than the full range of culpability that they were testifying to. Here, counsel asks, and that matters because your sentence is going to be based on cocaine, the weight, so the fact that you were able to plead to something less than that is a benefit to you, yes. As far as Ortiz is concerned, that question was allowed, but as far as Acosta was concerned, the court sustained the objection. Well, he was able to admit that he was able to plead to only one pound as opposed to the two pounds that he was charged with, again demonstrating that he received... But I guess here, this is our case, obviously, your case, but a juror is able to appreciate the distinction in the magnitude of the ranges, and if someone's talking about a 12- to 18-month range versus maybe a 180-month range, shouldn't a jury be able to appreciate that? Well, I think the... Shouldn't a jury be able to be told that? The other issue is that in this case, the defendants had yet to be sentenced, so where they would fall within any range was mere speculation. The government hadn't yet had a chance to evaluate their testimony, let alone make a recommendation to the judge, and the judge hadn't yet sentenced them. So online Chandler, who had received already that benefit, and the other cooperating witness who knew of the benefit he had received, here it remained unclear what exact benefit would be ultimately received. But the issue is not the sentence ultimately received. It's the magnitude of exposure. And as I understand the government's argument, you would cabin Chandler to a case about misleading testimony that was already put before the trial. Well, yes, that is candidly, I think, an important distinction. However, I think what the court looks at overall is whether the magnitude of the benefit was conveyed. But the magnitude of facing eight years, it was necessary to convey that specifically in Chandler for the jury to be able to assess the credibility of a witness that surely would mean ten years to life that these witnesses were facing. It would be of a sufficient magnitude that the specifics might need to be addressed. No? Well, again, it's the eight years in compared to the range that he did receive. The best that any of these defendants could say is that they hoped to be able to get out from underneath the minimum, so something less than that. But I don't think, first of all, I think that the maximums ultimately are often unrealistic when compared to the sentences that are actually received. So your typical drug defendant is not going to receive the maximum. Typically, their guidelines aren't going to follow within that range. And so using the maximums isn't necessarily a good guidepost. But if the circumstances overall impress upon the jury that this was indeed a substantial amount of time and a motivating factor in testifying, which all of them, all of their testimony did show, they received a benefit in the reduced charge, the sentence that they hoped to further reduce by being able to stay out of one bond pending sentencing. Counsel, unless there comes a further question on the competition clause, I want to go back to the standard on hearings. And specifically in Coxton, we discussed the Stewart standard, that is that clear, strong, substantial, and incontrovertible evidence. In some ways, that standard seems rather circular because, of course, if it were, at that point, incontrovertible, there would be no need for death, injury, or hearing. And the Second Circuit itself went on to talk about the inquiry ending when it's apparent to the trial judge that reasonable grounds to suspect prejudicial jury propriety do not exist. Isn't that the more accurate formulation of the Stewart standard? And that is whether reasonable grounds to suspect prejudicial jury propriety exist. Something lesser than the clear, strong, incontrovertible evidence standard that the government said was not necessary to get rid of. Well, I think that is the standard that this circuit has embraced. However, I think at the end of the day, I agree. Ultimately, it does come down to whether the defendant has put forth enough to establish that there was any impropriety, whether clear, convincing, all of those factors are met. You know, I would submit none of it. There wasn't even clear allegation as to how this limited interaction, if true, would have created a bias, an implied bias. That's a very close-regarded group or categories of, you know, relationships that one that the court would assume is such as to despite the jurors' attestations to the contrary that we've got to assume they can't be fair and impartial. Well, is it really the government's position that if we assume that juror 11 here actually accompanied this very defendant to various proceedings where there was discussion about the nature of the case and statements made by the defendant or his counsel that juror number 11, that that marshal could then be seated on the criminal jury trial and not be stricken for cause? If he did not remember. So this proof establishes that he worked at the courthouse in various capacities on certain dates, but it does not establish that he was in fact present for those hearings. It's not incontrovertible, but if we're looking at a standard of reasonable grounds to suspect prejudicial jury impropriety and there's now records reflecting in a smaller courthouse that on these very days when this defendant was presented that juror number 11 was working and transporting prisoners, why isn't that enough at least to get a hearing to ascertain whether he does or doesn't remember, whether there was or wasn't bias here? Because those hearings first of all are disfavored and therefore it does require more in an articulation of some basis to believe that it was anything other than simply not recalling this limited interaction four to five months earlier. So this is an incuse where there's actually been set forth a true tip that this person did in fact remember them, had some reason to want to be on the jury. There's nothing to infer from these facts that juror number 11, because he worked as a contracted U.S. Marshal, that he would want to be on the case, that he would want to find in favor of the government, or that he had any other nefarious reason or compelling reason to lie in order to get a seat on the jury. Just to clarify, you say four to five months earlier. I thought the verdict was returned in November of 2013 and the subpoena was issued in May of 2015. The interaction. So at the time that he was asked about having any interactions with the case, in the time that he responded he hadn't made any arrests of these defendants. Thank you. Four to five months earlier was when the dates he was alleged to have had any interaction with them. Okay. Thank you very much. I was hurt that Ms. Edwards did not recognize me in her first law argument that she did here. Not really, but just to make the point. If an elephant were talking to a lady and the elephant asked the lady, how long is your term of gestation? The elephant came there with me. You're lucky. These jurors have no conception that these people are looking at life in prison and they're looking at mandatory tenures in prison, mandatory five years in prison. They have no idea of that whatsoever. They have no clue of this rhetoric and what goes on. And what does the judge say? I don't want these jurors hearing about safety belt. It'll confuse them. Nothing about sentencing. Sentencing to a defendant who is on a witness stand testifying for the government is the only thing on their mind. All they care about is what do I need to say, what do I need to do to get home. Counsel, the attorneys were able to list on cross-examination as each of these witnesses that they were facing a substantial amount of time and they were seeking a recommendation for less. Less time. What substantial? A recommendation. In my brief edit, in my last two days, in my last 20 minutes, to a juror, I believe Judge Ross said six months. Our thoughts before was a year might be a lot of time. When I'm waiting to get out, that last buzzer, let me out of the jail, it's a long time for me until I hear that buzzer, let me get out of the jail after sequence. The point here is there is not enough provided here for those jurors to understand what's going on. Well, since it was indicated in Mossar and Jean-Baptiste that the district court cannot allow restrictions and have elicited something short of a specific amount of years, why isn't eliciting substantial time sufficient? Because it doesn't sufficiently notify the juror as to what the motive is, the bias is, for the juror, for the witness to testify in the way that they do. Are you advocating a rule that requires a specific amount of time to elicit? How is that consistent with Mossar and Jean-Baptiste? No, I'm not. But I think that they need to be aware, the jurors need to be aware of how much time someone is potentially facing. But do we want to get into the whole discussion before the jury of the guidelines? No. I mean, once you start talking about ranges, wouldn't it then be fair for the prosecutor to come back and redirect and say, yes, but do you know that there are such things as downward departures? Do you know that there are variances? Do we want to have jurors learn about this whole world of sentencing guidelines? No, for a variety of reasons. But to make the juror... I'm glad to hear you say that. No, because... It's bad enough for us to know about it. And worse for us here to know about it. But let me say, you are facing a mandatory minimum term of five years. You're facing a minimum mandatory term of ten years. You know that you are facing a maximum flight. You're now getting a reduction of those sentences. You've now gotten a reduction of those sentences. You are now waiting for, based upon your testimony, the government to come before your sentencing judge and say, Judge, we want you to give the person less time than what they otherwise would be looking for. I think that puts us in a much better light. And let me... Your time is done, but I want a couple points of clarification, just to make sure we understand your other arguments. Yes, ma'am. In terms of introduction and phone records, you argue about relevance and prejudice, but is the nature of your argument really a four or three argument, or is it a challenge to the authentication of the subscriber as your client versus a listening client? I can't give you a good answer to that. And I'm sorry, that's the best I can tell you. I don't think that that has an overall bearing on the outcome of the trial. I think that's not an issue. I think the more significant issue, the more significant issue is... You're no longer... You're withdrawing... I'm withdrawing, and I'm just going to stand on the jury as presented to me. Because I wanted to put my focus into the fact that the government here says, even if certain things occur and the judge's ruling is based on an assumption, we don't need to go into that any more than to say that we all know what happened and we assumed it. And let me ask you, on the denial of the motion to reduce the sentence, given that the district court expressly stated in its clarification on the denial of the motion to reduce the sentencing that it had granted the motion and already gave him the benefit of the amendment, if there was any error, why is it harmless error? He got the benefit. He got $151 million. So you're not pressing that argument either? It's not directed to the issues here. The answer to your question is, we're not pressing the issue of cause and effect. He got the benefit of it. Whether it was in the form of, I'm going to arrange a motion to do certain things, if you said a $151 to $188 range, if it's lower at the top of the guidelines than $151, you're still going to have the same thing. Thank you. Thank you to both counsels for your arguments today. Thank you very much.